## SUPERIOR COURT.

### APRIL, 1850.

### CORAM SANDFORD.

---

## TRUMAN B. BROWN *against* THE NEW YORK GAS LIGHT COMPANY.

Gas light companies, in lighting a city, are bound to supply pipes of sufficient strength to stand all lawful uses which may be made of the public streets through which they pass, and are responsible for all damages resulting from the breaking of the pipes in consequence of such use.

Heavy piles of bricks from old buildings, sudden and mischievous concussion from the careless dumpings of heavy building materials, may become an unlawful use, for which such company shall not be responsible.

When pipes are broken by any cause, and the company is notified, and negligently delays repairing them, and damage ensues, the company is responsible.

If a party has notice of the breach, and is aware of the danger, and heedlessly encounters it, he is without remedy, although the company may have been remiss.

IN the year 1823, the New York Gas Company was incorporated by the legislature of the state of New York, with a capital of one million of dollars, and, for an unlimited period, "to manufacture, make and sell gas for the purpose of lighting the city of New York, &c." Immediately after the passage of the law, the corporation of the city of New York entered into a contract, granting the company "the sole and exclusive right of laying pipes under ground

for conducting gas to light the public lamps and houses in the city of New York, south of a line running from the east river through Grand street, Sullivan street and Canal street to the north river, for the period of thirty years," which contract made it obligatory on the company to construct "their pipes in the most approved manner, of cast iron, of the best materials."

The company immediately erected their works for the manufacture of gas, and laid their pipes through the southern part of the city, within the prescribed limits, and lighted the city with gas, according to their contract.

In the spring of the year 1849, Courtlandt street, one of the streets so lighted by this company, underwent great alterations on both sides, the houses being generally pulled down, or raised and converted into stores of larger capacity.

The plaintiff was a house-mover, his business consisting in raising and moving buildings by the powers of the screw, and otherwise. He had, in the course of these improvements, been employed in the line of his calling in Courtlandt street for some time, and, on the 15th June, was at work at No. 4, in that street. This building was used as a bathing establishment, and had a vault under ground, in the front, for the keeping of the fuel necessary for heating the baths. The house was lighted with gas, the service pipe passing from the company's main through the vault into the premises.

On the 15th of June, the plaintiff had occasion to go into the vault for his tools, and called to one of his men to bring him a light, the vault being a dark one. He was in

Brown v. The New York Gas Light Company.

the vault searching for what he required, when the light was brought, and instantly the gas, which had been, from some cause, accumulating there, exploded, and so severely burnt the plaintiff that he was deprived of all power of attending to his business for a period of about six weeks: suffered great bodily pain, and his life was considered for a part of the time, in much danger.

Immediately after the explosion, an examination was made by the defendant of the premises, and it was discovered that the main gas pipe was broken opposite the vault, and that the gas insinuated itself through the loose sand into the vault.

The fracture seemed to be recent, and over a hollow space, where the earth had sunk or caved away. On the 13th June, coal had been taken into the vault, and a person had been at work there for upwards of half an hour, with a light.

The smell of gas had been observed for some time, but in an increased degree on the 14th, when the principal occupant of the house, who was an extensive jeweller, and who used the gas in the course of his business, being apprehensive, not of danger, but that he might be charged with the wasted gas, informed the defendants that there was a leak. The defendants sent persons to examine it, who, on the same day, discovered it in the main pipe, but made no repairs; they mentioned the danger to some of the workmen, but not to the plaintiff, the master workman.

It appeared that the mischief could have been repaired in three hours. The excuse, on the part of the company, was the sudden indisposition of the person sent by them to

23

take charge of it, which, however, it appeared, did not continue after six o'clock P. M. on the 14th, when he gave his attention to other work of defendants, and omitted to attend to this.

The defendants also proved that large quantities of building materials were piled upon said street, and that heavy foundation stones and granite columns were brought, about this time, to the same place. They also proved that, on the day of the explosion, the smell of gas was very strong.

*Anthon,* for plaintiff, contended,

I. That, under the statute, giving to defendants the sole and exclusive right of laying pipes under ground, for conducting gas to light the public lamps, &c., the soundness of those pipes, at all times, was entirely at defendants' risk.

II. That, when such pipes are broken, the defendants will be responsible, unless they can show that such breach did not proceed from internal defect, nor from any fault in the manner in which the pipes were laid.

III. That whatever may have caused the breach, it was, at all events, the duty of the defendants, when they received notice of the mischief, to give ample notice of the danger to the occupants and master-builder, and the public generally, and to remedy it without delay. *Delmonico* v. *Mayor of New York*, 1 Sandf. 222; *Mayor* v. *Frazer*, 3 Hill, 612; *Bailey* v. *Mayor, &c.*, 3 Hill, 531.

*Brady,* for the defendants, insisted,

I. That it was the duty of the plaintiff to show a positive defect in the pipes, and that there was no such general responsibility in that particular, on the defendants, as plaintiff insisted.

II. That the pipes were broken by the sudden concussion attending the dumping of the building materials, and that defendants were not responsible therefor.

III. That they had sufficiently notified the public by the notice given to some of the workmen.

IV. That the plaintiff's negligence and rashness was the immediate cause of the mischief, the strong smell of the gas being abundant warning.

SANDFORD, J. I do not think the responsibility of the defendants so general as is contended for by the plaintiff's counsel; they are undoubtedly bound to furnish pipes sufficiently strong to stand all lawful use which might be made of the public streets through which they passed; but, if broken by any unlawful or improper use of the streets, they are not responsible. Heavy piles of bricks, removed from old buildings, may become an unlawful use of the streets in this view; and so, also, the careless dumping of heavy building materials, occasioning sudden and mischievous concussions. If the pipes were broken from either of these causes in excess, the defendants would not be liable; but if from the ordinary and customary use of the streets, it would be otherwise.

The cause of the injury is, however, conjectural: there is no positive proof of its character. Whatever may have been the cause, however, it is clear that when the defendants were notified of it, it became their duty to remedy the evil with all speed, and to give sufficient notice of the impending danger.

If they have failed in these particulars, they are liable, independent of every other consideration, unless the plain-

tiff has been himself equally remiss. If he received no-
tice of the danger, and was aware of the inflammable and
explosive character of the gas, and still heedlessly encoun-
tered it, he is without redress.(1)

The jury found verdict for plaintiff, $1000.

*Anthon*, for plaintiff.

*Brady*, for defendants.

(1) The charge of the learned judge, in this case, is marked with his usual
caution and discretion. He has properly confined himself to the precise point
disclosed by the evidence. The jury probably rendered their verdict on the
omission to repair with promptness, when defendant was notified of the ex-
istence of the mischief. The general and peculiar responsibilities of a gas
company, arising from the nature of the article supplied for consumption,
must be disclosed practically as cases occur.

In the case of *Holding* v. *The Liverpool Gas Company*, (5 N. Y. Legal Ob-
server, 77,) it was attempted to make the company liable, because the com-
pany had no stop-cock on the outside of the meter, to enable them to turn
off the gas entirely from the interior of the house, when required. It ap-
peared that other companies had the entire command of the gas, by means
of such machinery, and it may be fairly inferred, from the facts disclosed, that
the injury to the plaintiff's house, by the explosion of the gas, which pro-
ceeded from some wilful destruction of the interior pipes by a burglar, would
not have occurred had the company turned off the gas effectually by such a
contrivance.

The learned judge (Creswell) non-suited the plaintiff at the trial, holding
that this was not a duty cast by law upon the defendant. Upon an applica-
tion to the court for a new trial, C. J. Tindal remarked, that on the part of
the plaintiff, it was contended that it was the duty of the defendant, on no-
tice by any tenant that the supply of gas was no longer wanted, to turn off
the gas completely from the house; that they had no right to introduce the
gas into the house after such notice; and that, if an outer stop-cock in the
street was absolutely necessary for that purpose, it was their duty to have
provided such stop-cock accordingly. On looking at the act, under which
this company was formed, no such direction appears to have been given to
the company by the legislature, though it appeared that a different company

Brown v. The New York Gas Light Company.

had been formed in the same town, and that such company had used an outer stop-cock in the same way, but they had no obligation, as it appears to us, to do so; and, as the legislature is silent on this point, the common law would impose no precise duty on the defendants, or any other duty than that which is expressed in the doctrine generally, of using proper and sufficient care in the supply of gas.

It is no easy matter to lay down general rules, defining the liabilities of companies or individuals introducing new and dangerous agents, for private emolument, into populous cities. It is, therefore, unreasonable to expect a description of them in an act of incorporation. The view, taken by the learned judge, seems altogether inadmissible. The liabilities must grow out of the subject matter, and must be peculiar to it, and it is the duty of those who introduce a dangerous agent, and derive emolument from it, to understand it, and provide all the safe-guards which science may from time to time develop. The outer stop-cock was, in this case, so obvious a protection, and being in addition in actual use, there seems to have been no apology for its omission, and the mischief being traced to this as a cause, the liability of the defendants seems to admit of no doubt.

This, it must be conceded, is a subject of great interest in this day of development, when the most powerful elements of nature are made subservient to the comfort of the human family; and one plain rule must at least be insisted upon, that there must be no lagging behind the progress of the age, in the application of all scientific or mechanical guards for individual safety. The common law affords, on this head, a perfectly safe rule, when it declares that he who puts in action any thing which he cannot control, must answer for all the consequences. *Guille* v. *Swan*, 19 Johns. 383. *Learne* v. *Bray*, 3 East, 595. This leads to the affirmative rule, that where an agent so introduced, is controllable by care, attention, or science, he who receives the emolument must take the responsibility.